Thank you, Your Honor. I'm Scott Martin for Plaintiff, Appellant, and Cross-Appellee Terry L. Mizzell. Your Honors, prudent people buy disability insurance, this really sounds like an echo of the last argument, to protect themselves in the event that a catastrophic illness or injury deprives them and their families of income. In return for the premiums that they pay, they have a right to expect, they do expect, that they will be treated fairly by the insurer that sells them the coverage, that the policy will be interpreted in a manner that is ordinary and reasonable, and that, in the event of a dispute, that they will receive fair and appropriate treatment in the courts. Regrettably, in this instance, save one exception from the district court, Terry Mizzell has not received any of that. September of 1995, he suffered a massive heart attack at 44 years of age. It was unexpected and unanticipated, as the discussion was this morning. He has never been able to do his job since that day. He attempted to return to work as part of the rehabilitation process under the instructions of his physician and his rehabilitation nurses, but he was never able to do his job. Of that, there was no question. Everyone that worked around him, his boss, his subordinates, his colleagues, his clients. Well, you know, I mean, I accept your characterization. I understand that you're making it, but it seems to me that by March of 1996, he was performing duties, but the big problem was that he couldn't travel, but he was working, but he was performing duties. He was maintaining client relationships, supervising employees. So he was doing some of the he was executing many of the requirements of his job. Was he doing some of the duties? Yes, he was. Could he show up at the office? And that's the problem. If he's doing some, how can he be totally disabled? And the reason why I don't think he's totally disabled is because I look at the definition of partially disabled, which is right under that. Your Honor. It sounds to me like at best he was partially disabled. The reason we believe that he was totally disabled under a fair and common reading of the policy is because of the decision in McClure, which talks about the fact that there's an ambiguity here. I don't see the ambiguity because you look at the definition of partial disability, which follows on in total, and that to me reflects considerable light on what all means in total. Your Honor, the difficulty here is that, again, as we read it and as we believe McClure requires and as a fair reading of the plan in an ordinary and common sense says is required under Richardson and is required under Deegan, if this man can't do his job, he should get the benefits for which he paid. And he was not able to do the job. He could. He was performing many of the aspects of his job. He simply was not traveling. Some of the duties he was not traveling. And that's why it sounds to me like this is partial disability, not total disability. I have kind of a practical view of this, and that is if you're asking insurance companies or courts to judge whether the person is doing their job well, you're asking them to do something that's really impossible and that they should not be doing. So that if a person is at their job being paid for their job, it's basically it seems to me there's a lot of weight on the side that he's not totally disabled. And when I read this, I read it that way. He's preventing from doing all the material and substantial duties of his occupation. And that means as long as the boss is willing to pay him, he's performing all the material and substantial duties of his occupation. When the boss says, okay, we're not paying you anymore, then he's now got an argument that he's totally disabled. So my view is while he's being paid and they're willing to pay him, that's the duties of his job. Your Honor, the specific circumstance here is that he was attempting to return to his duties while his boss, Bill Whitehead, the president of the company, was in Irvine from New York covering for him because he couldn't do the job. Okay. But see, you're asking the insurance company and you're asking the court to decide whether he's really good at his job, whether he can, you know, whether he's suiting all the things in the company. And it seems to me we shouldn't be involved in those things while the company is willing to pay him for doing his job. Well, the difficulty with that, Your Honor, is that it doesn't take into account the state court decision in McMackin, which I'm thinking should be followed here because what McMackin talked about, and there there was an eight-month period where the employee, as part of his rehabilitation efforts, attempted to do what his job required, when ultimately he was not able to do that. As the court in McMackin said, we shouldn't punish somebody for trying to come back to do their job. So they recognized him as totally disabled from the beginning of the eight-month period all the way through? They recognized that he was, in fact, disabled, yes. Partially disabled. Under McMackin? He was still working. Well, but the point was. You know, you understand this case. It's the whole thing about timing. It's when he became totally disabled. If it was after January 1, 1997, Hartford's no longer the insurer, not obligated to pay. Prior to that time, the record seems clear. He was performing many of the responsibilities of his job, simply not traveling. I'm not trying to punish the guy. Nobody's trying to punish him. The question is whether he gets the benefits of a contract that he entered into that says both totally and partially. He's not totally. He's still working. In McMackin, was he given total disability benefits from the beginning of the eight-month period all the way through? I don't believe he was. Okay. Because, again, Mizzell would clearly have to satisfy an elimination period. We have never argued that the benefits have to go back to the day of the heart attack. The benefits are only due once he satisfies the elimination period. Our contention is that when you read this clause, as would an ordinary and reasonable person, looking at it through the lens of McClure, looking at it through the decision in Richardson, looking at it through the decision in Deegan, when he buys disability coverage, he intends to protect himself in the event that he can't work. Well, you're asking us to ignore partial disability, and that's part of the policy that follows immediately on to total. Definitions. Definition of total disability, definition of partial disability. You're asking us to ignore the definition of partial disability, are you not? The partial disability, Your Honor, only applies if he is working at another job and making less than he was making. The point is, though, it illuminates the total disability provision that says all the material and substantial duties of your own occupation. But it presumes that he is, at some point in time, able to work full-time or part-time and make less than he made when he worked at base. Except that you are performing at least one of the material duties of your own occupation on either a full or part-time basis. And that has never occurred. When his physicians told him that he had to stop working, he has not returned to the workforce. Social Security has rated him as totally disabled. This is not something that he wants. Judge Trott, you made mention of the fact that he was only unable to travel. It was far more than that. The fact that he fell asleep literally every afternoon in his office. His secretary would have to close the door. He could not do the job required of him as the executive vice president and general manager of that office. And there was no other position for him to take. Let me ask you this. Suppose I read this your way and say, okay, we're going to construe this. It's ambiguous. We're construing it against the insurance policy. And so what does all the material and substantial duties of his occupation mean? And the question is, okay, so who says that he wasn't during this period doing all the material and substantial duties of his occupation during that period? His boss. Mr. Whitehead's declaration is in the record. It was available for Hartford to look at. They didn't bother. The vice president of human resources in New York, Ann Melanson, her declaration was in the record. So the declaration says we paid him his full salary, but he was not doing the material and substantial duties of his occupation. That's correct. They paid him for two reasons. One, because they hoped he would be able to rehabilitate himself, which did not happen. By August of 1996, he had informed Mr. Whitehead that his heart condition had not improved, that his doctors told him that if he tried to do what his job required, it would likely kill him, and that his condition was not going to improve. The decision was made at that point in time to find a replacement for him because there was no other job for him to perform within the organization. What happens if he was partially disabled during this period? Well, but the definition of partially disabled is not just working part-time in your job. You either can do your job or you can't do your job, as we read it. Partially disabled is a different character. It is a different job earning less money so that Hartford makes up the difference between what you are able to earn doing something else and what you would have been entitled to up to the maximum of the coverage if you stayed in your job. But that has never occurred. He has never had another job after this happened. Now, the second reason that he was kept on and why they paid him was not only to try to help him rehabilitate, but for the same reason that they kept him on from August when his doctors told him, you can't do it, until his successor, Tim Hart, was in place, which was to try to keep the Hyundai account under the roof of Bates. Ultimately, it didn't work. Ultimately, the Hyundai business went elsewhere, and Bates, to my knowledge, doesn't even exist anymore. But he was not being paid because he could do the job. They were paying to try to get him rehabilitated, and then they were paying him until Mr. Hart could start, not because he was doing the job. And that's clear in the record. Mr. Whitehead says that in his declaration. There's no evidence to the contrary. That's what was going on. Again, our reading of this language. And there's no evidence that during this period during which, after his heart attack, while he's being employed, while he's being paid, there's no evidence that his condition was, physical condition, was better then than it became later. No. The post-operative studies on his cardiac function, measuring the ejection fraction, found that it was between 30 to 35 percent. That's about as close as you can read it. I guess I'll ask the other side when we hear from him. But in your view, his physical condition today is the same as his physical condition at the time that he was being paid, post-heart attack. And if we were to find that he's totally disabled within the meaning of the policy, based on his current condition, that would mean that he's totally disabled within the meaning of the policy, back to the relevant period. Yes, because his condition has not improved. What is true is that it has not, because of some rather remarkable drugs, which have come on the market, which were not available in 1995, particularly, as referenced in the record, among the things that he takes is Coreg. The purpose of Coreg is to prevent the left ventricle of the heart from increasing in thickness in response to congestive failure. It prevents what the physicians refer to as remodeling. So his ejection fraction remains at about 30 percent. If he gets lower, to the 25 percent range, then he goes on the heart transplant list. So he has been able to maintain a plateau, but he doesn't get any better. He still has the same problem that he falls asleep literally every afternoon. He nodded off in the mediation with the Ninth Circuit mediator that we held trying to resolve this case. He can't stay awake in the afternoon. He can't do that job under this condition. So your argument is that even though he doesn't have a disability claim, because he lost no money, he still, well, I don't know what you can say. It seems to me he lost, during the period the policy was in effect, okay, he, whatever happened to him, he had no claim during that period because he was making his full salary, right? He did not cease working and satisfy the elimination period. That is correct. Okay. So how does, so he qualifies as a claimant under the policy, even though he can't claim? Because the disabling event occurred under Hartford's period of coverage. Okay. And if we were to agree with you that he was permanently disabled, even at this earlier period, how long, I should know this but I do not, how long does Hartford's obligation to pay him last? It lasts until age 65 or until his condition changes. I see. So even though there is a later policy, Hartford's obligation doesn't change. So not only would they owe him during the period, potentially owe him during the period during which he was being paid, they owe him until age 65. They do not owe him during the period that he was being paid. They only owe him once he satisfies the elimination period. And they are most assuredly entitled to a credit for the settlement. So we're fighting about the period until he reaches 65. We are. Or until he dies. Entitled to a credit for the settlement. He reached what? With Paul Revere. With Paul Revere. Yes. So that's finally with Paul Revere there was a settlement. Yes, there was. There was an appeal as to Paul Revere. That appeal was dismissed pursuant to a settlement that was negotiated with the Ninth Circuit mediator. So if you prevail as to the claim of total disability, Hartford gets a credit for the amount he was paid while he was actually working, even though you claim he was disabled during that period and the Paul Revere settlement. The claim does not go back to the period when he was actually working, Your Honor. I'm sorry, because that's the elimination period. It begins after he ceases working and then the elimination period is satisfied. Hartford is entitled certainly to a credit for the settlement with Paul Revere. And they are also entitled to a credit for his Social Security disability benefits, which are now about $2,000. I think he told me $2,034 per month. Okay. Thank you. Your Honor, I'm short on time. I didn't get a chance to address the issues about standard of review, but we've clearly focused on the issue of. Why don't we hear from the other side and then we'll give you a chance to respond. Very well. Thank you. May it please the Court. Good morning. Dennis Rolstad, Sedgwick Dieter here on behalf of Defendants, FLEs and Cross Appellants, Hartford Life and Accident Insurance Company and Hartford Life Insurance Company. I believe Your Honors have it exactly right. While somebody is getting their full salary, they are not disabled. Well, actually, that was a question for him. I got different questions for you. Long-term disability policies are replacement of income. If you have no income to replace, you are not disabled. The undisputed facts here show that he did not quit working until after termination of the Hartford policy. The LTD claim arises when somebody stops working. That is when they are no longer able to work. Let me ask you this in terms of time. I'm trying to figure out what's disputed and not disputed. Do you claim that he was healthier in that immediate post-heart attack period when he was at work than he is now? Well, as of today, I have no idea what his physical condition is. Certainly, from the time he had his heart attack, he did improve such that he was able to go back to work. He never made an LTD claim before he went back to work, and his condition did improve. And that allowed him to work. Well, who's William Whitehead? William Whitehead is the appellant's boss. And the boss says, and I'm sure you're familiar with this, although he came back to work, he was unable to perform the job of vice president general manager. Although it meant that I was required to continue spending significant amounts of time on the West Coast in order to cover Mr. Mazzel, I decided to keep him on the payroll because he was a valued employee. So the manager's really saying, is he not? The man was totally disabled. He couldn't perform the work. I was just carrying him because he was a valued employee. So doesn't the manager say he's totally disabled? And if he does, what's the implication of that? No, the manager admits that he's at work, that he's a valued employee, and that he's being paid his salary. But he can't perform. They're just carrying him. But so long as he's being paid his salary, he's not disabled. But that can't be right. If somebody's flat on his back, but he's being paid because some sense of loyalty, employee morale, and so on, that doesn't mean he's not disabled. That means he's getting paid. Where does it say in the definition of disabled, if he's being paid, he can't be disabled? Well, I believe, Your Honors, that this Court's opinion in Deegan is on point. And there's other cases, too, that I'll talk about in a minute. But in Deegan, we have a very similar circumstance. Somebody was in an auto accident, a different type of event. They were a number of months go by, and they're unable to work. They go back to work. They're in a worse position than the appellate here because they go back to work at another employer. Then they stop working again, and they no longer have any LTD policy at all. This Court determined, well, yes. The trial court first determined you're entitled to LTD benefits because you are disabled only up to the point where you go back to work. While you're working, you're not disabled. I don't think that has anything to do with this because I look at the definition of disability, and it says nothing about whether you're getting paid or not. It simply says whether you're prevented from doing all the material and substantial duties of your own occupation. We've got the guy's boss here saying he can't perform his job. We're simply carrying him because he's a good guy. That doesn't say anything at all in the policy about, but if you're getting paid, even though you're dead, you can't be disabled. It says whether you can't do your work, and the boss says he couldn't do his work. We were just carrying him. There would be no benefit to be paid. Let me ask you this. They were being nice. The boss says, look, you know, we're not a bunch of monsters over here. The guy worked for us for a long time. He did a terrific job. He was doing his best. He was trying to hang in there. He couldn't do it. We carried him rather than throwing him out, and then we finally decided, hey, it doesn't work. Oh, but they carried him, Your Honor, if I may, because he was valuable to them, because he was still had the client connection and because he was creating a replacement. That's not what he said at all. Let me ask you this. I'm trying to figure out. He was covering. I'm sorry. I'm just working on the definition of total disability in the policy. You are prevented by disability from doing all the material and substantial duties of your own occupation. I'm trying to figure out what all the material and substantial duties means. Is being able to talk with clients on the telephone, would that be a material and substantial duty? Yes, it would. What happens if somebody can talk on the telephone but is flat on his back? He is now a paraplegic, but he can talk on the telephone. That's a substantial duty. He can still do it. Is he substantially, is he totally disabled or not? It would depend upon whether that performance, that duty, had value to the employer or not. Well, I think you just told me it did. It was a substantial part of his duty to talk on the telephone to clients. He can still talk on the telephone to clients. The trouble is he's a paraplegic and he can't go into the office. And in truth, nobody would hire him. Well, see, that would be a different circumstance here. He was hired and being paid. No, wait a minute. You're sliding off. I'm trying to figure out what all material and substantial duties means. And you've told me that talking on the telephone and hypothetically giving you to clients is a substantial duty. But now you're telling me that somebody who can do that, nonetheless, is totally disabled. I don't get it. It would depend upon the particular occupation, Your Honor. In this particular circumstance, the declarations were that he was kept on because he was valued, because one of the things he was doing was keeping up this relationship with one of the firm's good clients. But it turns out it's not sustainable, meaning he's there for a little while. They're hoping he can work. Turns out he can't. That's right. And so his claim arises at the time when he actually stops working. You know, it sounds to me very much like this is a genuine issue of material fact, whether he was or he wasn't. The boss is going to come in and say, yeah, he was there. He was going through the motions, but he wasn't performing. I was covering for him. All we were trying to do was help him out. That sounds like enough to sustain a verdict in favor of the proposition that he was totally disabled. He was there in form only, not in substance. He wasn't performing. We were simply carrying him. Why isn't that a genuine issue of material fact on the question of whether he was totally disabled? Because the employer gets to decide in the first instance by paying or not paying a person. If they're paying, and this, I believe, is a point of view. I hate to interrupt you, but there's nothing in the definition of disability that talks about whether he's being paid or not. I understand your point. The boss is going to come in and say we were just carrying the guy. What do you want us to do, throw the guy out in the street? Mike? Did you actually dispute Whitehead's affidavit? Did I dispute it, Your Honor? Yeah. Well, it was never presented to Hartford during the administrative consideration. No, I meant, I thought this was up on summary judgment. This was on summary judgment, Your Honor. Okay, so they put in this affidavit in support of their motion, right? It was presented on several different times for several different purposes. I will, in opposition to the motion for summary judgment, Your Honor, Hartford moved for summary judgment on either discretionary or de novo standard of review. The court found, the district court found that while you'd win under discretionary or de novo standard of review, I would contend it's a matter of law, Your Honors. Okay, so you were really not disputing that, his boss's evaluation. You're really relying on his ability to do all the material and substantial duties of his job means, well, you disagree. I mean, apparently their view, which is somewhat a reasonable view, is that he has a job. He has many duties. Some are important, some are not important. If he can't do all of the important ones of his job, then he can't do his job. He's totally disabled. Your view seems to be if he can do any of the duties of his job, then he's not disabled. But it doesn't say any. It says all. Oh, it absolutely says all. In fact, that comes after McClure. McClure did not say that all was ambiguous. McClure said every was ambiguous. But I think it has to be, given your answer to my question, when I said assume that talking on the telephone is a material duty. But assume further that he's a paraplegic and he can't come to the office. You say, well, he's totally disabled, even though he can still talk on the telephone. It would depend upon the circumstances of the job. It's very fact specific. You'd have to look at somebody's occupation under the INEOC standard and see what that occupation involved. But certainly if the employer is willing to pay somebody, even if they were a paraplegic to talk on the phone, their full salary, then that employee has value and they cannot be disabled. Well, suppose he's willing to pay him, you know, as an interim measure to see how things go. It's up in the air. He's just paying him for a while. He hasn't made a declaration that he has a new job. His new job is only to talk on the telephone. We're just trying it out and it doesn't work. And if it doesn't work, the person stops working, and that's when their disability claim arises. That's how somebody is not penalized for attempting to work. They have a disability claim. Their claim begins when they stop working. Had the Hartford policy still been in effect when he stopped working February 28th of 1997, he'd have a claim under the Hartford policy. Let me ask you this, and I'm not asking you to concede these facts because these are not the facts of this case, but I'm trying to get at this conceptually. Someone has such a severe heart attack that from day one the doctor says, if you go back to work or even try to go back to work, that seriously endangers your health. You simply can't go back to that job. Nonetheless, his employer pays him for the next two years out of a sense of kindness and loyalty. Has that person been permanently disabled within the meaning of your policy? I'd have to ask whether they're actually going to work or not. Nope, they're staying home because the doctor said you can't do it. But they're getting paid. I've only seen... Your rule was so long as they're getting paid they can't be disabled. I've only seen those circumstances arise in short-term disability typically as here. The employer is responsible for that and will pay. Some employers have salary continuation programs. Setting all that aside, if they're not actually coming into the office or if they're actually not even doing any work at all, then maybe they're not performing all the duties. It doesn't sound like they're performing any of them. It sounds like you're also giving... Exactly, and that's what this policy means. You're only entitled to benefits if you're not performing. Yeah, but let me ask you this one. I'll change just a little bit, but I don't think it makes much difference. He does come into the office, but it's kind of a morale purpose for him and the others. People like seeing him. He's a nice guy. But, you know, he's just lolling on the bed all day long. He's had a serious stroke. He cannot do a lick of work, and he's getting paid for two years. Is he permanently disabled or not? It depends how the employer structures that pay. If they are paying him his salary because he is a valued employee, then he's not disabled. And his disability claim... But what happens if his value adheres in the fact that from time to time you can whisper, you know, the file's over there? And if that is valuable enough to the employer that they continue to pay him his full salary, then I would contend, Your Honors, as a matter of law, he's not disabled. I believe that's what Deegan means. I don't think I like you. I'm not going to buy that policy. What's the Department of Insurance doing with all of this discretionary business that's in these policies? Well, what the Department of Insurance is doing is stating that prospectively only, again, whatever they do will not affect this policy or any past policies. That's what the DOI itself has said. That's what the court in Accuson interpreted. That's what's required by the insurance code. It cannot go back and affect past issued policies. They've had a proceeding, and now, in fact, there's a separate lawsuit. Your Honors, it's not in the papers. I don't think it's relevant, challenging, and so that issue is up in the air. So, again, that would only affect future policies, not present. So it's up in the air whether this affects future policies. That's correct. But it does not affect past policies such as the policy at issue here. Okay. Thank you. You're welcome. Again, Your Honors, I think Deegan is controlling. The person in Deegan, because they went back to work during the period that they are at work and getting salary, they're not disabled. When they quit again, they might be disabled, and that's when their claim arises. Here it arose under the Paul Revere policy. He's not out. He made a claim under Paul Revere.  He'd been told by the employer that his insurer was changing from Harcher to Paul Revere. There was no mystery here. But there's no argument that if he were actually disabled, that he made a claim to you too late. Well, that has not yet been addressed by the court. That's not in front of us. Correct. That's not in front of us today on this subject. I believe it is in front of us today when we talk about attorney's fees, which I'll address in just a moment. Deegan is not a unique case, Your Honors. In fact, I have not seen any case that has found that while a person was at work receiving their full salary, they were also disabled. I am not aware of that case. I don't believe it exists. There are many other cases similar to Deegan that have cited the same reason. It's a factual question, though, based on the wording in your policy. Yes, but I believe that it's a matter of law under the common law of ERISA, Your Honor. Regardless of what it says in the policy, ERISA long-term disability policies are intended as replacement of income. If you have no income to replace, you are therefore not disabled. You are not forfeiting anything because if ultimately you stop working, that's when your disability claim arises, and that's the point at which you look to see if somebody is disabled. Of course, you look under the policy in effect at that time. Here, the Paul Revere policy was in effect. He, in essence, is pursuing double recovery, in fact, from Paul Revere and from Hartford. Yes, but of course, if he prevails against you, you get an offset. So we're not talking about double recovery. Well, but there was only one policy in effect at a time. No, I'm on the specific question of double recovery that you just raised. Are you saying that if he prevails against you, you don't get the offset?  Well, you'd like the offset. Well, you'd have to get an offset because that would... Well, then it's not double recovery. Okay. But only one or the other of the honors is in effect. You've got a claim under one or the other policy. The policies were not intended both to cover disability for the same policies. In fact, ERISA claims that are fully insured, as this one are, you've got one policy to fully insure it. You don't have two policies. There would be no point in that unless the insurers had some agreement to only cover half of whatever your percentage of salary was, and that was... There's nothing in the record on that, and that was not the case here. I did want to... I cited some other cases in my papers, Your Honor, similar to Deegan from other circuits around the country. Mehoff v. Magnatech, which was before a district court, was the same policy language at issue here, and the district court in that case found that, well, when you went back to work and during the period you were working, you're not disabled. I did want to mention the attorney's fees issue briefly, Your Honor. I believe, indeed, and I think because we've got undisputed facts here showing Lee Whitworth that the appellant is culpable in pursuing this bad faith claim, Your Honor. Certainly, I think the court should have found Hartford, as the prevailing party, certainly had the meritorious position, was entitled to its attorney's fees in this circumstance. He knew that his claim was under Paul Revere. He pursued Paul Revere for four years before ever submitting a claim to Hartford. He sued Paul Revere once. In fact, part of that went up to this court, and then was remanded to Paul Revere again, not only until Paul Revere had rejected his claim twice did he ever submit a claim to Hartford, and this was despite being trolled by his employer and knowing before he quit work that his claim would arise under the Paul Revere policy, Your Honor. It seems to me that Paul Revere rejected his claim because Paul Revere said he was totally disabled when he was discovered by you. Well, I don't need to. Certainly, Your Honor, I don't need to support the Paul Revere determinations. He was caught between two opposing forces. You're saying he wasn't totally disabled and Paul Revere says, yeah, he was. Get him out of our policy. And what's the standard you have to satisfy in order to be entitled to attorney's fees? Well, it's simply under the five factors of Hummel, Your Honor. And it's really just you look at those five factors and it is an abuse of discretion standard. I believe the district court abused its discretion in the manner in which it looked at those five factors. So you're arguing that he is pursuing his claim against you in bad faith. Well. You're arguing that he has an ability to oppose this even though you've not paid him any money and what little he has he's getting out of his settlement from Paul Revere. You know, I can't see an abuse of discretion on the district court on that, given the Hummel factors and say no attorney's fees for you guys. Well, I believe he did pursue it culpably. Bad faith itself is not required by the Hummel factors. It's simply a matter of culpability. And the courts also, Your Honor. Culpability means guilt. Culpability means he should not have pursued the claim against both insurers. But it means more than losing. It means more than losing. I agree. He should not have pursued this against two insurers. Only one policy could be in effect at a time. The plan did not have duplicate policies, duplicate benefits for a single disability. And his claim arose after he quit work. That's what the undisputed facts show, Your Honors. And I believe that plaintiffs and defendants should be treated the same under the fees statute. In fact, there's cases I've cited in the brief that say they should be treated the same. If we're this confused, it's hard for me to see that it's frivolous. Well, I understand, Your Honors. I don't believe that certainly the Hummel did not use the word frivolous. Okay. No mistake. Has he made a motion for attorney's fees against you in taking this appeal on the question of attorney's fees? No, Your Honor. Okay. I guess you're lucky in my view. All right. Thank you, Your Honors. If you have any more questions. I don't speak for the panel. Yes, you do. You speak for me. Thank you. We all agree. Your Honor, if I may just briefly. I think, Judge Fletcher, your questions about the man being able just to whisper and point fits exactly the way I tried to analyze the issue of total disability for the district court. And when I made then a reference to Christopher Reeve, who was then still alive, under Hartford's interpretation, Christopher Reeve, as a quadriplegic, would not have been totally disabled from doing the job of an ocean lifeguard. Because one of the essential duties of an ocean lifeguard is to watch the water for swimmers in trouble. And Mr. Rahlsted's response to the district court was, as long as the state of California was paying him, he would not be totally disabled. Well, again, to my reading, that flies directly in the face of McMacken, which emphasizes the public policy of encouraging people to come back to try to rehabilitate, which is what Mizell did. My thinking here, as I'm looking at this right now, is that there may be a genuine issue of material fact on whether he was totally disabled. If that's right, what happens? Well, I believe, Your Honor, that it should result in a reversal because, although I didn't address it in argument, although we certainly dealt with it in the brief, the district court used the wrong standard of reviewing Hartford's conduct. It reviewed it for abuse of discretion. The documents that we're looking at, I believe, are a summary plan description. We also briefed the fact that Hartford did not comply in any way, shape, or form with ERISA's requirements about notification when they deny a claim under either the statute or the regulation. They have to give Mizell a specific explanation as to what happened. If you look at their denial letter here, which is in tab 14 of the excerpts of record, it is a six-line letter addressed to Bates, not even sent to Mizell. They never said anything about appellate rights, nothing. So we think on those two bases alone, the standard of review of Hartford's conduct by the district court was wrong. It should have been reviewed de novo. If the court determines it should have been de novo, then you can remand and instruct him to deal with the issue of fact. Lastly, Judge Martin. And if it's discretion, can we do the same thing, but it's just a harder standard for you to satisfy if it goes to trial? Yes. Well, under abuse of discretion, the vehicle to try to decide whether or not there has been propriety is summary judgment. And that's what the district court chose to do here. Again, we think that's wrong. That ties into Judge Trott's question about the position of the Department of Insurance. The Department of Insurance in February of this year issued an opinion that discretionary clauses are unenforceable in California, period, end. And they issued a notice of withdrawal of previously approved policies. We think the first, the opinion letter, is enough as an intervening change in the law to take away discretionary review in this case. Now I'm hearing trains passing in the night. The other side says this is purely prospective and doesn't. The notice of withdrawal, Your Honor, is prospective as to policies which were previously approved. We filed a request for judicial notice. Hartford filed a motion to strike it and said to the court in a declaration filed by a gentleman named Jeffrey Appuzzo, who was a lawyer with Hartford in its home office in Connecticut, that the forms that are before you as what we think is a summary plan description had been approved by the Department of Insurance. Well, we have filed a request for supplemental judicial notice with Your Honors and have provided you with a certification from the Department of Insurance that says none of the forms in that document were ever submitted for approval by Hartford. So the prospective withdrawal, which was discussed by Judge Patel in the Firestone v. Accuson case, doesn't apply here because this policy was never approved by the Department of Insurance in the state of California. There should have been de novo review by the district court below, and then we would be back where we ought to be, which is that there is, in fact, a genuine issue as to whether this man was totally disabled. Thank you very much. Thank you very much. I thank both sides for their arguments in Rozelle v. Hartford Life. That's the last case on the argument calendar today. It is now submitted, and we are in adjournment until tomorrow morning. Thank you.
judges: Trott, W. Fletcher, Restani